```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CP Solutions PTE, Ltd.,       :
     Plaintiff,               :
                              :
v.                            :     Case No. 3:04cv2150 (JBA)
                              :
General Electric Co., et al., :
     Defendants.              :
```

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**
**[DOC. # 100]**

Plaintiff CP Solutions PTE, Ltd. ("CPS"), moves to amend its present complaint against defendants General Electric Company, GE Industrial Systems, GE Multilin Power Management Lentronics, GE Fanuc Automation North America, and GE Meter (collectively, "GE") to include reference to its parent corporation, Ultro Technologies, Ltd. ("Ultro"), add certain factual allegations, including new information regarding contract negotiation events prior to January 2003 (which was the time frame previously alleged), and include five new causes of action: breach of implied contract (Count IV); goods sold and delivered (Count VIII); a new claim of violation of the Connecticut Unfair Practices Act ("CUTPA") (Count X); punitive damages under CUTPA (Count XI); and assignment of claims (Count XII). See Pl. Mot. [Doc. # 100] & Ex. A (proposed Second Amended Complaint).

Defendants oppose the proposed amendments, claiming that CPS had knowledge of all of the facts necessary to include them prior to CPS's filing of the present complaint and offers no

1

explanation for its delay in proposing them, contending that GE will be prejudiced if the amendments are allowed as they will necessitate additional discovery, extension of the current discovery deadline, and may result in postponement of the current trial date, and arguing that some of the proposed new claims are futile.

For the reasons that follow, CPS's Motion for Leave to Amend will be granted.

**I.    Standard**

After a responsive pleading has been filed, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [it] ought to be offered an opportunity to test [its] claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962).

Where the amendment is proposed after the filing of a

responsive pleading, and following expiration of a court-ordered time period in which amendments will be permitted, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).  "[A] finding of 'good cause' depends on the diligence of the moving party," Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000), and "the court is free to conclude that ignorance of the law is an unsatisfactory excuse," Cresswell, 922 F.2d at 72.  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); accord Parker, 204 F.3d at 339.

In examining potential prejudice, courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  Block, 988 F.2d at 350. However, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989).

## II. Discussion

### A. Delay

The Court finds that plaintiff's delay in proposing these new amendments, while substantial, is insufficient to justify denying its motion. Plaintiff claims the delay was due to discovery, which enabled a narrowing of the issues involved in the case. However, as defendants correctly note, plaintiff's proposed amendments do not narrow the issues, but instead broaden them by inserting additional factual allegations which expand the relevant time frame of contract negotiations, as well as adding a new "player" – CPS's parent Ultro – along with five new causes of action. Additionally, it seems unlikely that it was discovery itself which prompted these amendments, as CPS must have had, for the reasons detailed by defendant in its opposition memorandum, all of the information necessary to propose these amendments, when it filed its first amended complaint.

Nevertheless, as noted above, delay alone is an insufficient basis on which to deny a motion to amend and, further, while plaintiff's proposed amendments were significantly delayed, discovery was still ongoing when plaintiff filed its motion and the scheduled trial date was approximately 10 months away.

### B. Prejudice

Likewise, the Court does not find that GE has identified any prejudice that would be sufficient to preclude plaintiff from

interposing the proposed amendments. While it is true that CPS seeks to introduce a new "player," Ultro, and to assert five new causes of action, plaintiff does not seek to join Ultro as a party-plaintiff and its references to Ultro are apparently for damages purposes only; moreover, while plaintiff styles its amendments as five new causes of action, as GE acknowledges two of the claims (XI and XII) are really just claims for additional damages, and the other three claims relate to the same subject matter as do those in the present complaint, although expanding the temporal scope somewhat. Thus, while GE will likely have to conduct some additional discovery relating to the new factual allegations and regarding Ultro, GE's characterization that it will "be forced to undertake extensive additional discovery . . . to respond to such dramatic changes in the case," Def. Opp. [Doc. # 106] at 13, seems at least somewhat overblown.

Further, at the time plaintiff's motion to amend was filed, more than two months remained in the discovery period and, clearly, no summary judgment motion had yet been filed. Indeed, GE has recently requested a pre-filing conference for purposes of discussing its intention to file a motion to dismiss on subject matter jurisdiction grounds, and thus that motion will have to be briefed and decided by the Court before any summary judgment motion would even be contemplated. Moreover, although all of these events, including any additional discovery necessitated by

plaintiff's proposed amendments, might entail postponing the current trial date of April 2007, GE admitted at the July 20, 2006 status conference that plaintiff's proposed amendments probably would not necessitate a longer trial.

Accordingly, the Court finds that the prejudice GE may suffer if the amendments are allowed, including any necessary additional discovery and the potential for delaying the current trial schedule (which might have been postponed in any event due to defendant's anticipated motion to dismiss), is insufficient to warrant denying plaintiff's motion.  See, e.g., State Teachers Retirement Bd., 654 F.2d at 856 (granting motion to amend because, inter alia, "this is not a case where the amendment came on the eve of trial and would result in new problems of proof," also noting "it appears that the amendment will not involve a great deal of additional discovery"); compare Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 161 (S.D.N.Y. 2005) ("A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed.") (citing cases).

   C.   Futility

Lastly, as noted above, the Court considers the potential merit or futility of the proposed amendments.  See Parker, 204 F.3d at 339 ("Where the amended portion of the complaint would fail to state a cause of action . . . the district court may deny

the party's request to amend.").

GE's opposition to the proposed amendments in this respect focuses on only two of the five proposed new causes of action – the count for punitive damages under CUTPA (Count XI) and the count for assignment of claims (Count XII).  The styling of plaintiffs' proposed amendments is beside the point – it is undisputed that plaintiff may seek punitive damages on a CUTPA claim, see Gargano v. Heyman, 203 Conn. 616, 622 (Conn. 1987), and, as clarified at the July status conference and in plaintiff's reply brief, "the purpose of the assignment claim is to facilitate CPS's ability to prove damages at trial and to comport with CPS's expert's report," Pl. Reply Br. [Doc. # 112] at 9 n.3.  However, because GE is correct that neither a CUTPA punitive damages request nor an assignment of claims allegation constitutes a separate cause of action under Connecticut law, plaintiff is directed to revise its proposed Second Amended Complaint to include its request for punitive damages in its prayer for relief section, rather than as a separate cause of action, and to incorporate factual allegations showing a valid assignment, rather than include a separate cause of action for assignment of claims.

### III. Conclusion

For the foregoing reasons, plaintiff's Motion to Amend [Doc. # 100] is GRANTED.  Plaintiff shall filed a revised Second

Amended Complaint incorporating the modifications described herein (and no others), within 10 calendar days, which the Clerk is directed to docket.

>IT IS SO ORDERED.
>
>_____/s/_____
>Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 27th day of September, 2006.**