```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CP Solutions PTE, Ltd.,         :
     Plaintiff,                 :
                                :
v.                              :     Case No. 3:04cv2150 (JBA)
                                :
General Electric Co., et al.,   :
     Defendants.                :
```

**RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 155] AND
PLAINTIFF'S MOTION REQUESTING JUDICIAL NOTICE [DOC. # 172]**

Plaintiff CP Solutions PTE, Ltd. ("CPS") initiated this action in federal court in California (it was subsequently transferred to this District pursuant to 28 U.S.C. § 1404(a)) alleging breach of contract and related claims against General Electric Company ("GE Company"), GE Industrial Systems, GE Multilin Power Management Lentronics ("GE Multilin"), GE Fanuc Automation North America, and GE Meter.  See Compl. [Doc. # 21]; see also First Am. Compl. [Doc. # 34].  Plaintiff's Complaint and First Amended Complaint refer to all of these defendants collectively as "GE."  Compl. ¶ 17; First. Am. Compl. ¶ 17. Defendants now move to dismiss this action pursuant to Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction on grounds that defendant GE Multilin, named in plaintiff's initial Complaint and First Amended Complaint, is a foreign entity, as is plaintiff CPS, and diversity jurisdiction cannot exist between two foreign entities ("aliens").  See Mot. to Dismiss [Doc. #

1

155].[1]

## I.   Factual and Procedural Background

In brief summary, CPS alleged in its Complaint and First Amended Complaint that in August 1998, GE Industrial Systems entered into a contract with Tru-Tech Electronics ("Tru-Tech"), a Malaysian corporation and manufacturer of electronic products, pursuant to which Tru-Tech would manufacture certain electrical products for GE Industrial Systems in Tru-Tech's manufacturing facility in Malaysia.  Compl. ¶ 21; First Am. Compl. ¶ 21.  CPS also alleged that in August 2001, defendant GE Multilin entered into a contract with Tru-Tech pursuant to which Tru-Tech would manufacture electrical products for GE Multilin, also at Tru-Tech's manufacturing facility in Malaysia.  Compl. ¶ 23; First Am. Compl. ¶ 23.  CPS, in turn, contracted with Tru-Tech in December 2002 to provide to Tru-Tech "full turnkey materials supply services to support Tru-Tech in its manufacture of GE products pursuant to the GE/Tru-Tech Contracts."  Compl. ¶ 25;

---

[1] Plaintiff requests that the Court take judicial notice of certain sections of the Canadian Business Corporations Act that may be relevant to assessment of the status of defendant GE Multilin, a Canadian entity.  See Motion Requesting Judicial Notice [Doc. # 172].  As these statutory provisions fall within the scope of Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"), and defendants do not object to the Court taking judicial notice of these provisions, plaintiff's Motion will be granted.

First Am. Compl. ¶ 25. As a result of cash flow problems on the part of Tru-Tech, CPS became concerned about providing any component parts to Tru-Tech without assurances from GE that, inter alia, GE "would not at any time claim a set off of the Tru-Tech/GE debt against any amounts due from GE to CPS." Compl. ¶ 27; First Am. Compl. ¶ 27.  The Complaint and First Amended Complaint detail the negotiations that ensued in January 2003 between "CPS and GE" (as noted above, GE is defined as all GE entity defendants collectively, including GE Multilin) "regarding a contract between CPS and GE whereby CPS would procure all component parts for electronic products which were to be manufacturer by Tru-Tech electronics according to GE's specifications and for GE's benefit," including "[t]hat GE expressly recognized CPS' business model of a tripartite or three party relationship," "[t]hat GE would pay CPS directly for all component parts procured by CPS or guarantee such payment;" and "[t]hat GE would in no event attempt to set off any amounts then due and owing or which would become due and owing in the future from Tru-Tech to GE against any amounts then owing or which would in the future become due and owing from GE to CPS."  Compl. ¶ 43; First Am. Compl. ¶ 43.  CPS claims that this "contract between GE and CPS was in effect as of January 28, 2003." Compl. ¶ 44(D), 45(D), 48; First Am. Compl. ¶¶ 44(D), 45(D), 48.

Accordingly, CPS sued all defendants for breach of contract,

3

alleging that "[o]n or about July 11, 2003, defendant GE breached the agreement by denying the existence of a contract and refusing to pay CPS for component parts procured by CPS for the benefit of GE." Compl. ¶ 50; First Am. Compl. ¶ 50. CPS also asserted claims against all defendants for fraud/intentional misrepresentation, negligent misrepresentation, promissory estoppel, unjust enrichment, conversion, and unfair business practices under Conn. Gen. Stat. § 42-110b.

On September 27, 2006, this Court granted plaintiff's request for leave to amend its complaint in order to "include reference to its parent corporation, Ultro Technologies, Ltd. ("Ultro"), add certain factual allegations, including new information regarding contract negotiation events prior to January 2003 (which was the time frame previously alleged), and include five new causes of action: breach of implied contract (Count IV); goods sold and delivered (Count VIII); a new claim of violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count X); punitive damages under CUTPA (Count XI); and assignment of claims (Count XII)," although directing plaintiff "to revise its proposed Second Amended Complaint to include its request for punitive damages in its prayer for relief section, rather than as a separate cause of action, and to incorporate factual allegations showing a valid assignment, rather than include a separate cause of action for assignment of claims," to

reflect "that neither a CUTPA punitive damages request nor an assignment of claims allegation constitutes a separate cause of action under Connecticut law." See Ruling on Mot. for Leave to Amend [Doc. # 132] at 1, 7.

However, before plaintiff filed the approved amended pleading, on September 28, 2006 the Court held a pre-filing conference with the parties to discuss defendants' contemplated motion to dismiss for lack of subject matter jurisdiction on grounds that GE Multilin is a foreign entity, as is plaintiff CPS, and thus no diversity jurisdiction exists. See 9/28/06 Pre-Filing Conf. Tr. ("Tr.") [Doc. # 169. Ex. 4]. Plaintiff proposed removing GE Multilin as a defendant in this case, to which defendants objected, arguing that "the issue before the Court remains, the issue of whether or not there was diversity jurisdiction at the time this case was filed" and contending that GE Multilin is an indispensable party to this action. Id. at 16. Defendants opposed allowance of an amended complaint dropping GE Multilin as a defendant, to be followed by briefing on the issue of dispensability, arguing that "if the defendants were to agree to an amendment and say, well, that amendment then solves – we've resolved the jurisdictional problem and then we're moving on to a new issue of what is a dispensable party, we would be procedurally inaccurate, and it could affect the standard that your Honor uses to determine that. It also can affect who would

5

have the burden of proof." Id. at 17-18.  Ultimately, the parties agreed that CPS would file "a proposed supplemental complaint" followed by the parties' "briefing on whether or not the plaintiff's proposed solution does or does not solve the jurisdiction problem." Id. at 19.

Accordingly, on October 13, 2006, CPS filed the contemplated Second Amended Complaint [Doc. # 146], and on November 9, 2006, defendants filed their Motion to Dismiss, styled as one pursuant to Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction.  For the reasons that follow, defendants' motion will be granted.

**II. Discussion**

    A.   Procedural Posture/Applicable Standard

The parties' legal memoranda characterize the procedural posture of this case and the standards applicable to defendants' motion in significantly different ways.  Defendants contend that plaintiff's Second Amended Complaint is merely a proposed pleading, that plaintiff's First Amended Complaint remains the operative filing, that diversity jurisdiction is to be determined at the time of the filing of this action, and thus because plaintiff's initial Complaint listed GE Multilin, a Canadian entity, as a defendant, there is no such jurisdiction. Defendants contend that GE Multilin cannot be dropped as a defendant as it is an indispensable party to this action because,

inter alia, CPS claimed it was a breaching party to the alleged contract, and defendants contend that plaintiff bears the burden of proving otherwise (i.e. the burden of proving the existence of diversity jurisdiction).  Plaintiff, by contrast, contends that its Second Amended Complaint is the operative complaint and thus that defendants' motion should have been styled as one to dismiss for non-joinder of an alleged indispensable party and that defendants cannot meet their burden under Fed. R. Civ. P. 19 of showing that GE Multilin is a necessary, and thus indispensable, party.

As described above, however, plaintiff's Second Amended Complaint was filed on consent based on the understanding that it would constitute a "proposed supplemental complaint" and "plaintiff's proposed solution" to the recognized jurisdictional problem, see Tr. at 19-20, after which defendants would file their motion to dismiss for lack of diversity jurisdiction, regarding which motion the September 28, 2006 pre-filing conference was initially scheduled.  Plaintiff's reading of the September 28 conference as granting it leave to file an operative amended pleading which would delete GE Multilin as a party defendant, thus transforming defendants' anticipated motion into one to dismiss for failure to join an indispensable party, is illogical where the Court characterized CPS's pleading as a "proposed supplemental complaint," where accepting that proposed

pleading as operative would shift the burden of proof from plaintiff to defendants, and given that defendants rightly objected to such a course as "procedurally inaccurate," id. at 17.

Indeed, as defendants claim, once the issue of lack of diversity jurisdiction is raised, a Court must first determine its jurisdiction before ruling on other matters. See Broad v. DKP Corp., 97civ2029 (LAP), 1998 WL 516113, at *2 (S.D.N.Y. Aug. 19, 1998) (where defendant moved to dismiss for lack of subject matter jurisdiction and plaintiff countered with a proposal to amend his complaint to add civil RICO violations which would have created federal question jurisdiction, the Court was constrained to grant the motion to dismiss and, "[o]nce defendant's motion to dismiss [was] granted, there simply [was] no remaining case or controversy for plaintiff to re-fashion in an attempt to remain in federal court"), aff'd 182 F.3d 898 (2nd Cir. 1999); see also generally Gutierrez v. Fox, 141 F.3d 425, 426 (2d Cir. 1998) ("The district court could not address the merits of plaintiff's claim without first determining that it had jurisdiction. . . . Without jurisdiction, any decision or ruling by the court would be a nullity.").

Accordingly, the proper standard is that for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3), the Court must consider whether diversity

jurisdiction existed as of the time the action was commenced, and then, assuming absence of such jurisdiction at that time, whether the non-diverse party GE Multilin may be withdrawn as merely a dispensable party, such that the jurisdictional defect is cured. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569-72 (2004); Fed. R. Civ. P. 19, 21.

Under Rule 12(h)(3), the issue of the Court's subject matter jurisdiction may be raised at any time: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.  For purposes of this case, the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (internal citation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings, id., and evidence concerning the

court's jurisdiction "may be presented by affidavit or otherwise,"[2] Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.").

As CPS recognizes, "diversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." Universal Licensing Corp. v. Paola Del Lungo S.P.A., 293 F.3d 579, 581 (2d Cir. 2002); see also Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569 (2004) (no diversity jurisdiction where "aliens were on both sides of the case"). Additionally, "[i]t has long been the case that the jurisdiction

---

[2] This is inconsistent with plaintiff's contentions in its objections to the affidavits submitted by defendants on, inter alia, hearsay grounds, lack of foundation, and based on Connecticut General Practice Book § 17-46, which states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." See Pl. Objs. [Docs. ##173-178]. As noted above, the federal rule is that affidavits concerning the Court's jurisdiction may be considered, and plaintiff offers no authority for its suggestion that Connecticut state practice should control here. Moreover, the affidavits, at least with respect to the facts relied on by the Court in this ruling, do set forth bases for personal knowledge of the contents thereof. Accordingly, plaintiff's objections are overruled.

of the court depends upon the state of things at the time of the action brought." Grupo Dataflux, 541 U.S. at 570 ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."); accord Universal Licensing Corp., 293 F.3d at 581 ("In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced.").

The Supreme Court in Grupo Dataflux, 541 U.S. at 572, recognized that the "method" of curing a jurisdictional defect "by dismissal of the party that had destroyed diversity" "had long been an exception to the time-of-filing rule," observing "[t]he question always is, or should be, when objection is taken to jurisdiction of the court by reason of the citizenship of some parties, whether they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." The Grupo Dataflux court noted that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse

party to be dropped at any time, even after judgment has been rendered." Id. at 573 (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)).  Thus, when a plaintiff proposes dropping a defendant in order to manufacture diversity, courts "routinely appl[y]" the factors listed in Fed. R. Civ. P. 19 to determine whether the defendant in question is "indispensable": "(1) the plaintiff's . . . interest in having a federal forum; (2) the defendant's . . . interest in avoiding multiple litigation, inconsistent relief, and sole responsibility for liability jointly shared, if codefendant is dismissed from the suit; (3) the absent codefendant's inability to protect its interests in any judgment rendered; and (4) the public interest in complete, consistent and efficient settlement of controversies." Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 73 (2d Cir. 1984) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11 (1968)).  "The burden of proving jurisdiction is on the party asserting it." Malik, 82 F.3d at 562.

    B.   Analysis

    Defendants argue that GE Multilin is an indispensable party as it was, according to CPS' Complaint and First Amended Complaint, a party to the contract which CPS claims was

breached:[3]  CPS does not dispute the allegations of its Complaint and First Amended Complaint – alleging a contract between "GE" (defined as all GE entity defendants collectively, including GE Multilin, see Compl. ¶ 17; First Am. Compl. ¶ 17) and claiming breach of that contract by all defendants, including GE Multilin – but rather contends that the allegations of its Second Amended Complaint, which alleges that defendants GE Company and General Electric Industrial Systems only were parties to the contract with CPS, see Sec. Am. Compl. [Doc. # 146] ¶¶ 5-7, 51-52, supercedes its earlier allegations.  However, the existence of diversity jurisdiction and, relatedly, whether GE Multilin constitutes a non-diverse indispensable party, is determined on the factual circumstances <u>at the time the initial Complaint was</u>

---

[3] CPS argues that it did not sue the GE Multilin party which defendants have now demonstrated is a Canadian entity, but that in its Complaint and First Amended Complaint it named as a defendant the entity "GE Multilin Power Management Lentronics," to which defendants responded in their answers "that there is now and never has been an entity" by that name, "although there do exist business divisions, which operate under similar and related trade names and which are ultimately owned by General Electric Company, with a principal place of business in Markham, Ontario, Canada."  Answer to Compl. [Doc. # 22] ¶ 7; Answer to Am. Compl. [Doc. # 36] ¶ 7.  However, while plaintiff CPS may have mistaken the specific entity name in its Complaint and First Amended Complaint, CPS clearly intended to sue "General Electric Multilin, Inc." as it is undisputed that "General Electric Multilin, Inc." was the GE Multilin party to the August 15, 2001 contract with Tru-Tech alleged in plaintiff's pleadings (Compl. ¶ 23; First Am. Compl. ¶ 23).  See Aug. 15, 2001 Contract Manufacturing Agmt. [Doc. # 156, Ex. B]; Dauberas Aff. ¶ 2.

filed,[4] and the allegations in plaintiff's Complaint and First Amended Complaint state that GE Multilin was a party to the contract with CPS that CPS claims was breached, and that GE Multilin was a breaching party. A party to a contract which is the subject of the lawsuit "is the paradigm of an indispensable party." Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) (Nevas, J.); see also Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 701 (2d Cir. 1980) (citing, inter alia, Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party.") (citing

---

[4] Plaintiff's argument that "[t]he law clearly and unequivocally states that 'when a pleading is amended or withdrawn, the superceded portion ceases to be a conclusive judicial admission,'" Pl. Opp. [Doc. # 168-2] at 12 (citing Jarnvagsstyrelsen v. Dexter & Carpenter, 32 F.2d 195, 198 (2d Cir. 1929), is inapplicable as plaintiff's Second Amended Complaint is a proposed pleading and the operative pleading – plaintiff's First Amended Complaint – has not yet been amended or withdrawn. Further, Jarnvagsstyrelsen also notes that the superceded portion of an amended or withdrawn pleading "still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." Id.

cases).[5]

Thus, the Court determines that it must consider defendants' motion as one challenging diversity jurisdiction at the time this action was filed and on the basis of the facts alleged in plaintiff's initial pleadings, and finds that GE Multilin is an indispensable party to the action filed inasmuch as CPS alleged that GE Multilin was a party to the contract which CPS claims was breached, and that GE Multilin breached that contract, and thus no diversity jurisdiction existed at the time of the filing of this action because both CPS and GE Multilin are foreign entities.  Having so found, the Court lacks jurisdiction to accept plaintiff's Second Amended Complaint as the operative pleading in this case and thus does not consider the parties' arguments concerning whether GE Multilin constitutes an indispensable party under the allegations of that pleading.

## III. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss

---

[5] The Court cannot credit plaintiff's argument that because defendants have admitted that GE Multilin was dissolved in February 2004, GE Multilin cannot be considered an indispensable party to this action.  First, as plaintiff acknowledges, pursuant to Canada's Business Corporations Act § 226, "a civil, criminal or administrative action or proceeding may be brought against the body corporate within two years after its dissolution as if the body corporate had not been dissolved."  See Canada Business Corporations Act § 226(2)(b) [Doc. # 171-4].  GE Multilin was dissolved in February 2004 and plaintiff filed its Complaint in April 2004.  Moreover, upon dissolution, GE Multilin's assets and liabilities were transferred to, and remain with, another Canadian entity.  See Daubaras Aff.[Doc. # 157] ¶¶ 2-3.

[Doc. # 155] is GRANTED, as is plaintiff's Motion Requesting Judicial Notice [Doc. # 172].  The Clerk is directed to CLOSE this case.

                                    IT IS SO ORDERED.

                                         /s/
                              Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 24th day of January, 2007.**